IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FREE SPEECH COALITION, INC.; D.S. DAWSON; JOHN DOE; DEEP CONNECTION TECHNOLOGIES, INC.; CHARYN PFEUFFER; and JFF PUBLICATIONS, LLC,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>JESS L. ANDERSON, in his official capacity as THE COMMISSIONER OF THE UTAH DEPARTMENT OF PUBLIC SAFETY; and SEAN D. REYES, in his official capacity as THE ATTORNEY GENERAL OF THE STATE OF UTAH,<br><br>　　　　　　　　　Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br><br>Case No. 2:23-CV-287 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motion to Dismiss. For the reasons discussed below, the Court will grant the Motion.

I.　BACKGROUND

In 2023, the Utah legislature passed a bill—S.B. 287—requiring commercial entities that provide pornography and other materials defined as being harmful to minors to verify the age of individuals accessing that material.[1] A commercial entity may be held liable if it "fails to perform reasonable age verification methods to verify the age of an individual attempting to access the material," and a commercial entity that is found to have violated the law "shall be liable to an individual for damages resulting from a minor's accessing the material, including

---

[1] Utah Code Ann. §§ 78B–3–1001 to –1002.

1

court costs and reasonable attorney fees as ordered by the court."[2]

S.B. 287 identifies three reasonable age verification methods. Relevant here is the use of a "digitized information card." The Act defines "digitized identification card" as

> a data file available on any mobile device which has connectivity to the Internet through a state-approved application that allows the mobile device to download the data file from a state agency or an authorized agent of a state agency that contains all of the data elements visible on the face and back of a license or identification card and displays the current status of the license or identification card.[3]

Plaintiffs contend that S.B. 287 is unconstitutional and seek an order "enjoining the Commissioner of Utah's Department of Public Safety from permitting its data files to be downloaded for use" in the age verification process "and the Attorney General from otherwise intervening to enforce the Act."[4] Defendants seek dismissal.

## II. MOTION TO DISMISS STANDARD

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) permits dismissal for lack of subject matter jurisdiction. When a facial attack of the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint, the Court applies the same standards as one made pursuant to Rule 12(b)(6).[5]

## III.  DISCUSSION

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

---

[2] *Id.* § 78B–3–1002(1), (3).

[3] *Id.* § 78B–3–1001(2).

[4] Docket No. 2 ¶ 63.

[5] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "[T]he Eleventh Amendment has been interpreted to bar a suit by a citizen against the citizen's own State in Federal Court."[6] It also extends to "suit[s] against a state official in his or her official capacity" because such suits are "no different from a suit against the State itself."[7] However, under the *Ex parte Young* exception to Eleventh Amendment immunity, a plaintiff may bring suit to prospectively enjoin state officials from violating federal law.[8]

To invoke this exception, the named state official "must have some connection with the enforcement" of the challenged statute.[9] Otherwise, the suit "is merely making him a party as a representative of the state, and thereby attempting to make the state a party."[10] The named official is "not required to have a 'special connection' to the unconstitutional act or conduct. Rather, state officials must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty."[11]

Plaintiffs' claims against the Utah Attorney General do not fall within the *Ex parte Young* exception to the Eleventh Amendment. As Plaintiffs' Complaint acknowledges, "the Act creates a private right of action by which Utah residents—and not state actors—are empowered to do the State's bidding."[12] Plaintiffs point to the Attorney General's general duties to "prosecute or

---

[6] *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (internal quotation marks and citation omitted).

[7] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

[8] *Johns*, 57 F.3d at 1552.

[9] *Ex parte Young*, 209 U.S. 123, 157 (1908).

[10] *Id.*

[11] *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007).

[12] Docket No. 2 ¶ 63.

defend all causes to which the state or any officer, board, or commission of the state in an official capacity is a party, and take charge, as attorney, of all civil legal matters in which the state is interested" and to "give [their] opinion in writing and without fee."[13] However, the mere general duty to enforce the law is not sufficient to invoke *Ex parte Young*.[14]

Plaintiffs rely on a series of Tenth Circuit cases where the court found a sufficient connection between the authority of the attorney general and the enforcement of the relevant state laws to allow for the *Ex parte Young* exception. These cases not only predate recent Supreme Court authority on this issue, they are also distinguishable on the facts. In particular, Plaintiffs cite to *Petrella v. Brownback*[15] and *Chamber of Commerce of the United States of America v. Edmondson*.[16]

In *Petrella*, the Tenth Circuit found that the governor and attorney general of Kansas were both proper parties to a suit challenging the state's school-funding laws. In addressing the causation prong of the standing analysis, the court stated that "[i]t cannot seriously be disputed that the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for

---

[13] Utah Code Ann. § 67-5-1(b), (g).

[14] *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quoting 13 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3524.3 (3d ed., Oct. 2020 update) ("[T]he duty must be more than a mere general duty to enforce the law.")); *see also Whole Woman's Health v. Jackson*, ---U.S.---, 142 S. Ct. 522, 534–35 (2021) (finding that the *Ex parte Young* exception did not apply where the attorney general did not possess any enforcement authority in connection with the law at issue).

[15] 697 F.3d 1285 (10th Cir. 2012).

[16] 594 F.3d 742 (10th Cir. 2010).

the enforcement of that statute."[17] It went on to state that it could not "be disputed that the Governor and Attorney General of the state of Kansas have responsibility for the enforcement of the laws of the state."[18]

The Tenth Circuit has recently distinguished *Petrella* in finding that suit against a state attorney general was barred by the Eleventh Amendment. In *Hendrickson v. AFSCME Council 18*, the Tenth Circuit found that the governor and attorney general of New Mexico were immune from suit where the statute at issue vested enforcement authority in a board that was independent from the governor and attorney general. In discussing *Petrella*, the court noted that there was no indication that "the statutory provisions at issue fell outside the scope of [the attorney general's] enforcement powers."[19] But, since the statute in *Hendrickson* vested enforcement power in an independent body, the court found that the plaintiff's reliance on *Petrella* unavailing. The same result is warranted here. While the Attorney General has a number of general duties, S.B. 287 vests enforcement authority in private citizens, not the Attorney General. As such, the *Ex parte Young* exception does not apply and *Petrella* does not dictate a different result.

In *Edmonson*, the Tenth Circuit addressed an Oklahoma statute that regulated "illegal immigration and verification of employment eligibility."[20] As to one provision of the statute, the court held that the attorney general was not protected by Eleventh Amendment immunity because it found that the attorney general had "a particular duty to enforce that section and a

---

[17] *Petrella*, 697 F.3d at 1293–94.

[18] *Id.* at 1294.

[19] *Hendrickson*, 992 F.3d at 968.

[20] *Edmonson*, 594 F.3d at 750.

demonstrated willingness to exercise that duty."[21] However, with respect to a different section of the statute, the court reached the opposite conclusion because the plaintiffs did "not cite to any Oklahoma law authorizing the Attorney General to enforce that provision."[22] Because the attorney general had no particular duty to enforce that provision, it fell "outside the scope of the *Ex parte Young* exception" and the attorney general was "entitled to immunity as to that challenge."[23] Thus, *Edmonson* does not support Plaintiffs' arguments.[24] Instead, *Edmonson* stands for the proposition that Eleventh Amendment immunity applies when the law at issue does not provide the attorney general with the power to enforce it.

In sum, Plaintiffs point only to the Attorney General's generalized responsibilities to enforce the laws of the state and provide written opinions to the legislature. Such general enforcement powers are not sufficient to establish the connection needed to invoke the *Ex parte Young* exception to Eleventh Amendment immunity. Plaintiffs have failed to demonstrate that the Attorney General has a particular duty to enforce S.B. 287 or that he has demonstrated a willingness to exercise that duty. Therefore, Plaintiffs' claims against the Utah Attorney General must be dismissed.

---

[21] *Id.* at 760 (citation omitted).

[22] *Id.*

[23] *Id.* (citing *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (merely because "an attorney general has a duty to prosecute all actions in which the state is interested [is not] enough to make him a proper defendant in every such action")).

[24] Plaintiffs' reliance on *Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014), is also misplaced. There, the Tenth Circuit "conclude[d] that the Governor's and the Attorney General's actual exercise of supervisory power and their authority to compel compliance from county clerks and other officials provide[d] the requisite nexus between them and" the challenged law. *Id.* at 1204.

Turning to Plaintiffs' claims against Commissioner Anderson, they also fail to meet the *Ex parte Young* exception. Anderson is the Commissioner of the Utah Department of Public Safety. The Department includes the Driver License Division ("DLD"). The DLD manages Utah's Mobile Driver's License program ("mDL"), which provides an official copy of a user's driver's license or identification card to their mobile device.[25] Plaintiffs allege that the mDL program provides the only qualifying "digitized identification card," which is one of the three methods for reasonable age verification. It is this link between the mDL program and its use as a potential method for age verification that provides the basis for Plaintiffs' invocation of *Ex parte Young*. However, Plaintiffs admit that the mDL program "does not yet provide for the online verification necessary for the card to be of any use to putative providers and viewers of 'material harmful to minors' online."[26]

The Tenth Circuit has made clear that under the *Ex parte Young* exception, the state official must "have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty."[27] Commissioner Anderson has no ability to enforce S.B. 287. Rather, as Plaintiffs admit, that provision provides for a private right of action. Plaintiffs argue that the mDL program, as a potential method for age verification, will help give effect to S.B. 287.

The Tenth Circuit has applied the *Ex parte Young* exception where "[d]efendants, although not specifically empowered to ensure compliance with the statute at issue, clearly have

---

[25] Docket No. 2 ¶ 18.

[26] *Id.*

[27] *Hendrickson*, 992 F.3d at 965 (citation omitted).

assisted or currently assist in giving effect to the law."[28] For example, in *Wagnon*, the court applied the *Ex parte Young* exception where the defendants were all state officials who, in one way or another, had some connection with the statute at issue.[29] That is not the case here, where Commissioner Anderson's connection with S.B. 287 is only that he oversees the mDL program. Such a connection is simply too attenuated to provide the connection required by *Ex parte Young*.[30]

Further, as noted, the mDL program's online verification is not currently operative. Its functionality is currently limited to an in-person scan.[31] As such, it can hardly be said that Commissioner Anderson clearly has assisted or currently assists in giving S.B. 287 effect.

Even assuming that Commissioner Anderson's connections to the mDL program were sufficient to invoke the *Ex parte Young* exception, Plaintiffs claims against Commissioner Anderson are not ripe. Plaintiffs admit that the mDL program does not yet provide for online verification. Plaintiffs speculate that the entity that provides the digitized identification card "may or may not choose to do business with covered websites, and may or may [not] charge constitutionally permissible fees for use of its product."[32] Such speculative statements demonstrate that any claim against Commissioner Anderson, to the extent there could be one, is premature.

---

[28] *Wagnon*, 476 F.3d at 828 & n.15.

[29] *Id.* at 828.

[30] *Ex parte Young*, 209 U.S. at 157.

[31] Docket No. 32, at 3.

[32] Docket No. 2 ¶ 50.

Plaintiffs argue that Defendants are the equivalent of the licensing officials in *Whole Woman's Health* that the Supreme Court concluded fell within the scope of the *Ex parte Young* exception. However, the Court reached this conclusion because each of those individuals was "an executive licensing official who may or must take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code, including" the challenged law.[33] Because those defendants had the authority to enforce the challenged provision, this was sufficient to allow the suit to proceed against them.[34] Defendants here do not possess any similar enforcement authority. As such, they are more akin to the Texas attorney general in *Whole Woman's Health*, who did not fall within the *Ex parte Young* exception.[35]

Plaintiffs also suggest that "[r]elief from this Court would likewise redress Plaintiffs' injuries by discouraging putative litigants from wasting time suing under a statute promising illusory awards of unrecoverable damages."[36] The Supreme Court rejected a similar argument in *Whole Woman's Health*. There, the petitioners argued that enjoining the attorney general from enforcing a statute "would also automatically bind any private party who might try to bring . . . suit against them."[37] The Court noted that this theory suffered "from some obvious problems."[38]

---

[33] *Whole Woman's Health*, 142 S. Ct. at 535.

[34] *Id.* at 535–36.

[35] *Id.* at 534 ("While *Ex parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws, the petitioners do not direct this Court to any enforcement authority the attorney general possesses in connection with S. B. 8 that a federal court might enjoin him from exercising").

[36] Docket No. 32, at 14.

[37] *Whole Woman's Health*, 142 S. Ct. at 534.

[38] *Id.*

The Court explained that even "[s]upposing the attorney general did have some enforcement authority . . . , the petitioners have identified nothing that might allow a federal court to parlay that authority, or any defendant's enforcement authority, into an injunction against any and all unnamed private persons who might seek to bring their own . . . suits."[39] Therefore, the potential to ward off future suits is not sufficient.

The Court acknowledges Plaintiffs' concerns about the propriety of the legislature outsourcing the enforcement of laws that raise important constitutional questions. The wisdom of such policy decisions is best left to the other branches of government. It may be of little succor to Plaintiffs, but any commercial entity sued under S.B. 287 "may pursue state and federal constitutional arguments in his or her defense,"[40] they just cannot receive a pre-enforcement injunction against the two named Defendants.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion (Docket No. 29) is GRANTED. This action is dismissed without prejudice.

DATED this 1st day of August, 2023.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[39] *Id.* at 535.

[40] *Id.* at 537.